UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                 Plaintiff,              No. 15-CR-20338

-vs-                            U.S. District Judge Judith E. Levy

D-2   SHARON GANDY-MICHEAU,

                 Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

### I. BACKGROUND

This Court is familiar with the facts of this case, having presided over two

trials.  Defendant Sharon Gandy-Micheau was a part of a conspiracy and scheme to

defraud the Internal Revenue Service.[1]  Altogether, 22 fraudulent federal income

tax returns for estates and trusts, Forms 1041, were prepared and filed with the IRS

in the names of nonexistent trusts.  The returns requested refunds totaling

_____

[1] There were five other defendants.  Anthony Gandy and Christopher Gandy
were convicted at trial with defendant in March 2017.  Durand Micheau was
convicted at trial in May 2017.  Shanel Seay agreed to cooperate and was placed
on pretrial diversion.  And Derrick McCoy was acquitted in March 2017.

approximately $1.4 million.  The IRS issued 14 refund checks, which were mailed to post office boxes connected to one or more of the defendants.  The other eight returns did not lead to the issuance of refund checks because the fraudulent nature of those returns was detected by the IRS before the checks went out.

The 14 refund checks mailed to the defendants totaled $939,000.  Of that amount, the defendants ultimately received $360,000 in cash through the negotiation of the checks.  Four of the refund checks were cashed at check-cashing stores.  The remainder were deposited into newly opened checking accounts established in the names of the trusts.  Large cash withdrawals followed soon thereafter.

In light of the factors discussed below, the government requests this Court to find that defendant's advisory guideline range is **63-78 months** in prison and impose a sentence in light of that range.  It also requests this Court to impose an additional two-year term of imprisonment to run consecutively to the underlying sentence.  In addition, the government requests this Court to impose a three-year term of supervised release and order defendant to pay restitution to the IRS in the amount of $360,469.05, jointly and severally with her codefendants.

## II.  THE POST-*BOOKER* SENTENCING PARADIGM

This Court no doubt is very familiar with the basic sentencing process that exists post-*Booker*.  Although the guideline range is now advisory rather than mandatory, a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  The district court should then consider the guideline range along with the other six factors prescribed in section 3553(a) before imposing sentence.[2]  *See,*

---

[2]  Section 3553(a) reads:

*(a) Factors to be considered in imposing a sentence.* — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider —

*(1)* the nature and circumstances of the offense and the history and characteristics of the defendant;

*(2)* the need for the sentence imposed —

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

*(3)* the kinds of sentences available;

*e.g, Gall*, 552 U.S. at 49-50.  The Sixth Circuit "may conclude that a sentence is unreasonable when the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a)." *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

### III. DEFENDANT SHARON GANDY-MICHEAU'S GUIDELINE RANGE

The probation officer calculated defendant's guideline range to be **63-78 months**.  *See* PSR ¶ 76.  The government agrees.  Defendant has filed no objections to the Presentence Report.

---

*(4)* the kinds of sentence and the sentencing range established for —

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines — (i) issued by the Sentencing Commission  .  .  . ; and (ii) that .  .  .  are in effect on the date the defendant is sentenced;

.    .    .    .

*(5)* any pertinent policy statement —

(A) issued by the Sentencing Commission  .  .  . ; and

(B) that  .  .  .  is in effect on the date the defendant is sentenced[;]

*(6)* the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

*(7)* the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

- 4 -

## IV. THE 3553(a) FACTORS

### A. Punishment and Crime Control

As this Court well knows, the key provision of the Sentencing Reform Act

of 1984 is section 3553(a)(2), which provides that a district court

shall consider — . . .

(2) the need for the sentence imposed —

(A) to reflect the seriousness of the offense, to promote respect
for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;
and

(D) to provide the defendant with needed educational or
vocational training, medical care, or other correctional treatment in
the most effective manner[.]

18 U.S.C. § 3553(a)(2). "These four considerations – retribution, deterrence,

incapacitation, and rehabilitation – are the four purposes of sentencing generally,

and a court must fashion a sentence 'to achieve the[se] purposes . . . to the extent

that they are applicable' in a given case." *Tapia v. United States*, 564 U.S. 319,

325 (2011) (quoting 18 U.S.C. § 3551(a)).

These

purposes can be categorized into two general philosophies.  The first is just punishment, sometimes called "just desert" or retribution, which is the criteria of justification for deontological theories [i.e., theories of morality or ethics].  These trace their roots to the philosophy of Immanuel Kant or to the biblical lex talionis ("life for life . . . eye for eye, tooth for tooth . . .").  The second general philosophy is utilitarianism.  Deterrence, incapacitation, and rehabilitation are all utilitarian crime-control measures tracing their philosophical roots to Jeremy Bentham.

Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules:  Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 AM. CRIM. L. REV. 19, 21 n.6 (2003).

As described above, "just punishment" refers to the concept of retribution. Retribution is a part of the fabric of criminal justice.  This factor, of course, does not alone dictate any particular sentence.  It is simply one of a number of factors courts must consider.  But, like any relevant factor, it should not be completely disregarded.

Determining what punishment is just in any given case must also take into account the victims of the offense.  Defendant's crime, in and of itself, did not result in substantial harm to the government as a whole.  But the impact of tax fraud on the revenues of the United States is immense.  It is estimated that the U.S. Treasury loses hundreds of billions of dollars *every year* from the fraudulent

circumvention of the federal tax code.  *See* New York Times, Nov. 28, 2011 ("The United States lost the most tax revenue in absolute terms – $337 billion – followed by Brazil and Italy.").[3]

Another section 3553(a)(2) factor, which is related, is deterrence.  Although the government believes that defendant presents no risk of recidivism, that speaks to the principle of *specific* deterrence.  But there is also *general* deterrence.  As this court knows, general deterrence is the idea that others will be deterred from committing crimes if a sentencing judge makes an example of the defendant being sentenced.  This is especially relevant to white collar crime and tax offenses.  *See* U.S.S.G. chapter 2, part T, subpart 1, introductory comments ("Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines.").

To be clear, the government is not urging this court to impose a sentence that is unnecessarily punitive.  It is simply asking this court to take into account all

---

[3] *Available at* http://www.nytimes.com/2011/11/26/business/global/26iht-tax26.html?_r=0&pagewanted=print.

- 7 -

relevant factors in fashioning that sentence, including society's interest in both just punishment and general deterrence.

### B. The Nature and Circumstances of the Offense

A district court "shall consider — (1) the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). The scheme in this case was elaborate. As this Court will recall, the defendants filed applications with the IRS to obtain Employer Identification Numbers (EINs) for their fictitious trusts. A Form 1041 had to contain an EIN to be processed by the IRS.

The defendants rented numerous post office boxes and a box at a UPS store to make their scheme work. The fictitious trusts needed addresses, and the income tax refund checks had to be delivered somewhere other than the defendants' homes, for obvious reasons.

The defendants illegally obtained and used the names, addresses, Social Security numbers, and other personally identifiable information of many strangers whose PII and ID cards had been lost or stolen.

The defendants used check-cashing stores. And they opened bank accounts and a brokerage account in the names of trusts with phony trust documents and used those accounts to convert the refund checks into cash.

Finally, the defendants recruited and exploited a number of friends and acquaintances to abet the scheme.

*****************

Defendant Sharon Gandy-Micheau participated in all aspects of the scheme. She was there at the beginning. The first two income tax refund checks were issued in 2010 and 2011 in the amounts of $71,800 and $50,300. They were made payable to the Moorish Republic Trust and mailed to a post office box in Oak Park rented by her and her husband, Durand Micheau. Each of the two refund checks was negotiated through a bank account in the name of the Moorish Republic Trust that listed defendant and her husband as the trustees. Durand Micheau was listed as "Durand Micheau El" on the first account and as "Gamba Mwenye El" on the second.

Defendant deposited the $71,800 check into the first account in May 2010 and immediately began making cash withdrawals. The entire amount was gone in a week. She deposited the $50,300 check into the second account in August 2011. Within a day she had withdrawn $6,000 in cash and no doubt would have withdrawn the remaining $44,300 had the bank not quickly frozen the account.

Defendant also rented three post office boxes that were used a number of times to further the conspiracy. One post office box was the address on the Sharon

- 9 -

Trust Fund income tax return and was where the corresponding refund check was delivered in July 2012.  Defendant cashed that check, in the amount of $33,800, at a check-cashing store.

The same post office box was the address on the Derrick McCoy Trust income tax return and was where the corresponding refund check was delivered in December 2012.  That check, in the amount of $39,200, was cashed at a check-cashing store by Derrick McCoy.

Another post office box rented by defendant was the address on the Brandi Shorter Trust income tax return.  (No refund check was issued.)  That post office box was also used on the IRS application form for an EIN (employer identification number) for the Bank of America Investment Trust.

The third post office box rented by defendant was the address on the Brandon Bradley Trust income tax return and was where the corresponding refund check was delivered in February 2013.  That check, in the amount of $34,200, was cashed at a check cashing store by Brandon Bradley.

In February 2013, defendant accompanied Shanel Seay, a family friend, and assisted her when Seay opened a bank account in the name of the Deshawntia Moorer Trust.  Both defendant did the talking and had the trust documents.  The income tax refund check deposited into the new account was payable to the

- 10 -

Deshawntia Moorer Trust in the amount of $88,700.  Seay made a number of cash withdrawals and cleaned out the account in a month.

Two months later defendant accompanied Seay again when Seay opened a bank account in the name of the Randi Hardy Trust.  That account was used to facilitate the conversion of the refund check payable to the Randi Hardy Trust into cash.  The amount of that check was $83,600.  Seay managed to withdraw about $5,500 before the bank froze the account.

The last income tax return was filed in August 2013.  That return, in the name of the Alania Curry Trust, used an address in Baltimore, Maryland, which was odd.  It did not result in a refund check.  But a copy of that return was found in defendant's house in Detroit, where Durand Micheau also resided, when a federal search warrant was executed there in November 2013.

In sum, defendant was deeply involved in the conspiracy in several important ways and from its beginning until its end.

### C.  Defendant's History and Characteristics

A district court "shall consider — (1)  .  .  .  the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  Defendant was born in Columbus, Mississippi, and is 46 years old.  *See* PSR ¶ 50.  She has 7 siblings.  *See* PSR ¶ 52.  She is separated from her husband, Durand Micheau, and has three adult children.

- 11 -

*See* PSR ¶¶ 54-55.  She is currently residing with one of them, in Hazel Park.  *See* PSR ¶ 56.

Defendant has a high school education but apparently no diploma.  *See* PSR ¶ 69.  However, she claims to have graduated, and the government does not contest that.  The PSR says that defendant has been unemployed for the last 13 years.  *See* PSR ¶ 71.

The PSR also notes that defendant has taken pain medication and antidepressants in the past and continues to use pain medication.  *See* PSR ¶¶ 61-63, 66.

It is not clear to the government how defendant's mother is doing.  Defendant's sentencing memorandum, filed under seal on or about November 27, 2017, states that her mother recently suffered a stroke and that she is her mother's principal caregiver.  *See* Defendant Sharon Gandy-Micheau's Sentencing Memorandum, Request for Variance, p. 7.

However, the government received an email on November 20, 2017, from Anthony Gandy's attorney (Paul Stablein) relating that their mother was admitted to Sinai Grace Hospital on account of a recent stroke.  The email also said that their mother had just been transferred to a skilled nursing facility in Southfield that provides both inpatient and outpatient care.  And it added that Anthony Gandy

"has been making the decisions for her and is the primary contact for the facility."
Anthony "is her primary caregiver."

The Court may want to inquire about defendant's mother's current physical
condition and living arrangements at the sentencing hearing.

### D.  Unwarranted Disparity

A district court "shall consider — . . . (6) the need to avoid unwarranted
sentence disparities among defendants with similar records who have been found
guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  The Supreme Court has
observed that in enacting the Sentencing Guidelines, "Congress 'sought *uniformity*
in sentencing by narrowing the wide disparity in sentences imposed by different
federal courts for similar criminal conduct[.]'"  *Rita v. United States*, 551 U.S. 338,
349 (2007).  Thus, the more a district court imposes a sentence in the
neighborhood of the applicable guideline range (here, 63-78 months), the more it
contributes to national uniformity.  "[I]t is fair to assume that the Guidelines,
insofar as practicable, reflect a rough approximation of sentences that might
achieve § 3553(a)'s objectives."  *Rita*, 551 U.S. at 350.

### E.  Restitution

In addition, a district court "shall consider — . . . (7) the need to provide
restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  The probation

officer believes that the appropriate amount of restitution to be paid to the IRS is $360,469.05, PSR ¶ 88, and the government agrees.  Although defendant's financial condition is very weak, *see* PSR ¶¶ 72-73, an order of restitution is *required* by the Mandatory Victim Restitution Act of 1996, 18 U.S.C. § 3663A.  In some cases, for any number of reasons, the collection of restitution pursuant to an order of restitution is problematic.  But that is the government's problem, not the Court's.  *See* 18 U.S.C. § 3664(m)(1)(A).

## V.  AGGRAVATED IDENTITY THEFT

Defendant was convicted of three counts of aggravated identity theft (Counts 38, 40, and 41).  The aggravated identity theft statute provides in relevant part:

(a)  *Offenses*. –

> (1)  In general. – Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to *a term of imprisonment of 2 years*.

.      .      .      .

(c)  *Definition*. – For purposes of this section, the term "felony violation enumerated in subsection (c)" means any offense that is a felony violation of –

> .      .      .      .

> (5)  any provision contained in chapter 63 (relating to mail, bank, and wire fraud)[.]

- 14 -

18 U.S.C. § 1028A(a)(1), (c).  Chapter 63 of Title 18 includes two offenses that

defendant was charged with and convicted of:  mail fraud (18 U.S.C. § 1341) and

conspiracy to commit mail fraud (18 U.S.C. § 1349).

The statute goes on to state that the 2-year sentence is mandatory and must

be consecutive to the underlying sentence:

(b)  *Consecutive sentence*. – Notwithstanding any other
provision of law –

(1)  a court shall not place on probation any person convicted of
a violation of this section;

(2)  except as provided in paragraph (4), no term of
imprisonment imposed on a person under this section shall run
concurrently with any other term of imprisonment imposed on
the person under any other provision of law, including any term
of imprisonment imposed for the felony during which the
means of identification was transferred, possessed, or used;

(3)  in determining any term of imprisonment to be imposed for
the felony during which the means of identification was
transferred, possessed, or used, a court shall not in any way
reduce the term to be imposed for such crime so as to
compensate for, or otherwise take into account, any separate
term of imprisonment imposed or to be imposed for a violation
of this section; and

(4)  a term of imprisonment imposed on a person for a violation
of this section may, in the discretion of the court, run
concurrently, in whole or in part, only with another term of
imprisonment that is imposed by the court at the same time on
that person for an additional violation of this section, provided
that such discretion shall be exercised in accordance with any

- 15 -

applicable guidelines and policy statements issued by the
Sentencing Commission pursuant to section 994 of title 28.

18 U.S.C. § 1028A(b).

In *Dean v. United States*, 137 S. Ct. 1170 (2017), in the course of

interpreting the meaning of another criminal statute (using a gun during a crime of

violence, 18 U.S.C. § 924(c)), the Supreme Court noted the aggravated identity

theft statute and made the following observations:

> "Congress has shown that it knows how to direct sentencing practices
> in express terms." *Kimbrough v. United States,* 552 U.S. 85, 103, 128
> S.Ct. 558, 169 L.Ed.2d 481 (2007).  Congress has shown just that in
> another statute, 18 U.S.C. § 1028A.  That section, which criminalizes
> the commission of identity theft "during and in relation to" certain
> predicate felonies, imposes a mandatory minimum sentence "in
> addition to the punishment provided for" the underlying offense.  §
> 1028A(a)(1).  It also says that the mandatory minimum must be
> consecutive to the sentence for the underlying offense.  §
> 1028A(b)(2). . . .  But § 1028A goes further:  It provides that in
> determining the appropriate length of imprisonment for the predicate
> felony "a court shall not in any way reduce the term to be imposed for
> such crime so as to compensate for, or otherwise take into account,
> any separate term of imprisonment imposed or to be imposed for a
> violation of this section."  § 1028A(b)(3).

137 S. Ct. at 1177.

In sum, this Court should impose a term of imprisonment based on

defendant's advisory guideline range of 63-78 months.  Then it should impose a

second term of imprisonment of two years, which must run consecutively to the

first term of imprisonment.

## VI. Proportionality

The basic objective of the Sentencing Reform Act of 1984

> was to enhance the ability of the criminal justice system to combat crime through an effective, fair sentencing system.  To achieve this end, Congress first sought honesty in sentencing. . . .  Second, Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.  Third, Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity.

U.S.S.G. ch. 1, part A, subpart 1 ("3. The Basic Approach (Policy Statement)").

In any given case, the principle of proportionality means that, all other things being equal, a more culpable defendant should receive a harsher sentence than a less culpable defendant.  This principle is reflected throughout the Sentencing Guidelines, and it informs the appellate review of federal sentences as well.  The Sixth Circuit has written, "A sentence is substantively reasonable 'if it is proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a).'"  *United States v. Moon,* 808 F.3d 1085, 1090 (6th Cir. 2015) (citations omitted); *see also United States v. Smith,* 505 F.3d 464, 470 (6th Cir. 2007) ("Modern-day sentencing should be guided by 'the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the

seriousness of the circumstances surrounding the offense and the offender'"

[citation omitted].).[4]

As this Court may recall, Christopher Gandy's advisory guideline range,

not taking into account the mandatory consecutive two-year term, was 63-78

months.  This was based on a total offense level of 26 and a criminal history

category of I.  *See* PSR ¶ 85 (C. Gandy).  This Court sentenced him to 48 months'

imprisonment, and it also imposed the mandatory consecutive 24-month sentence

---

[4]  One section 3553(a) factor involves "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  This addresses the related but different issue of sentence uniformity, as opposed to sentence proportionality.  "Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct.  It is not concerned with disparities between one individual's sentence and another individual's sentence, despite the fact that the two are co-defendants."  *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (citations omitted).

Still, section 3553(a)(6) does nothing to undercut the overarching proportionality principle.  "A district judge . . . *may* exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence."  *Id.* at 624; *accord United States v. Mahbub*, 818 F.3d 213, 233 (6th Cir. 2016).  "If the district court does so and wishes to keep sentences among the defendants relatively fair, it is hard to believe that it could be wrong, let alone plainly wrong, to use proportions in doing so."  *United States v. Mullet*, 822 F.3d 842, 853 (6th Cir. 2016).

required by the aggravated identity theft statute, 18 U.S.C. § 1028A.  Thus, Christopher Gandy's total term of imprisonment was 72 months.

Anthony Gandy's advisory guideline range, not taking into account the mandatory consecutive two-year term, was 92-115 months.  This was based on a total offense level of 26 and a criminal history category of IV.  *See* PSR ¶ 83 (A. Gandy).  Yesterday this Court sentenced him to 56 months' imprisonment, and it also imposed the mandatory consecutive 24-month sentence required by the aggravated identity theft statute, 18 U.S.C. § 1028A.  Thus, Anthony Gandy's total term of imprisonment was 80 months.

Defendant Sharon Micheau-Gandy's advisory guideline range is the same as Christopher Gandy's, 63-78 months, based on a total offense level of 26 and a criminal history category of I.  *See* PSR ¶ 76.

A reasonably proportional sentence for Sharon Gandy-Micheau would be the sentence imposed on Christopher, 72 months.  The government does not believe their overall criminal culpability differs in any material way.  And while their personal circumstances are different, the government is not persuaded at this time that any of defendant's circumstances indicate that she should receive a lighter sentence than her brother Christopher received.

- 19 -

## VII. CONCLUSION

For the reasons explained above, taking into account all of the section 3553(a) factors, the government requests this Court to find that defendant's advisory Sentencing Guidelines range is 63-78 months and to impose a combined term of imprisonment of **no less than 72 months**.  In addition, the government requests this Court to impose a three-year term of supervised release and order defendant to pay restitution to the IRS in the amount of $360,469.05, jointly and severally with her codefendants.

Respectfully submitted,

MATTHEW SCHNEIDER
*United States Attorney*

s/Stephen L. Hiyama
STEPHEN L. HIYAMA
*Assistant United States Attorney*
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3220
phone:  313-226-9674
e-mail:  stephen.hiyama@usdoj.gov
Date:  January 24, 2018          bar no.:  P32236

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                    Plaintiff,                  No. 15-CR-20338

-vs-                                U.S. District Judge Judith E. Levy

D-2   SHARON GANDY-MICHEAU,

                    Defendant.

_____/

## CERTIFICATE OF SERVICE

I certify that on January 24, 2018, I electronically filed the *Government's Sentencing Memorandum* with the Clerk of the Court using the ECF system, which will send notification of such filing to the following ECF participant(s):  Alvin Sallen.

                                     s/Stephen L. Hiyama_____
                                     STEPHEN L. HIYAMA
                                   *Assistant United States Attorney*
                                   211 West Fort Street, Suite 2001
                                   Detroit, Michigan  48226-3220
                                   phone:  313-226-9674
                                   e-mail:  stephen.hiyama@usdoj.gov

Date:  January 24, 2018             bar no.:  P32236