UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                  CR. NO. 15-20338

v.

                                  HON. JUDITH E. LEVY

SHARON GANDY-MICHEAU,

          Defendant.

_____/

**COMBINED MOTION AND BRIEF IN SUPPORT OF
MOTION FOR COMPASSIONATE RELEASE AND REQUEST FOR A
HEARING**

### I.    BACKGROUND

As this Court is aware, COVID-19 has created unprecedented danger to incarcerated people. COVID-19 has now killed 140 U.S. prisoners.[1] Ms. Gandy-Micheau ("Gandy") is currently housed at Houston FDC. She has been incarcerated since July of 2018. She is eligible for home confinement on July 28, 2022, roughly eighteen months from now, and has an ultimate release date of October 18, 2023. Ms. Gandy suffers from anemia, hyperlipidemia and has a BMI higher than 25 which might place her at heightened risk according to revised CDC guidelines on COVID-

---

[1] https://www.bop.gov/coronavirus/ ( accessed Nov. 17, 2020)

1

19. These conditions render her vulnerable should she become infected with Covid-19.

Section 3582(c)(1)(A)(i) permits sentencing judges to grant a reduction of sentence, after considering the § 3553(a) factors, if "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."

As the BOP faces a rapidly escalating health crisis because of COVID-19, several courts in this district have recognized that the pandemic, for an offender with pre-existing health problems rendering them vulnerable to severe illness from COVID-19, is an extraordinary situation warranting release under § 3582(c)(1)(A)(i). *See, e.g., United States v. Jelinek,* No. 15-20312, 2020 WL 3833125, at *1 (E.D. Mich. July 8, 2020) (Parker, J.); *United States v. Nazzal,* No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020) (Lawson, J.); *United States v. Rahim,* No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (Edmunds, J.)*; United States v. Loyd,* No. CR 15-20394-1, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (Tarnow, J.); *United States v. Agomuoh,* No. 16-20196, 2020 WL 2526113, at *1 (E.D. Mich. May 18, 2020) (Levy, J.); *United States v. Pomante,* No. 19-20316, 2020 WL 2513095 (E.D. Mich. May 15, 2020) (Hood, C.J.).

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

There is no exhaustion barrier in this case. Section 3582(c)(1)(A)(i) gives this Court authority to grant the requested relief after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Ms. Gandy made a request on May 27, 2020 and received a boilerplate denial letter on June 4, 2020. (Exhibit 1 - Administrative Request) This apparently was her second request as she indicated she made a request on May 22, 2020 but it was returned without a response.[2]

### III. EXTRAORDINARY AND COMPELLING REASONS WARRANT RELEASE

#### A. Release is consistent with the policy statements

Ms. Gandy's release is consistent with the Sentencing Commission's policy statements for two reasons. First, her health condition, combined with this pandemic, "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [he] is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Release in these circumstances is consistent with this policy statement. *See, e.g., United States v. Reddy,* No. 13-CR-20358, 2020 WL 2320093, at *5 (E.D. Mich. May 11, 2020); *United States v. Amarrah,* No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020). Additionally, Ms. Gandy also presents "Other Reasons" under U.S.S.G. § 1B1.13,

---

[2] Ms. Gandy requested compassionate relief on May 22, 2020 and renewed her request again on July 20, 2020.  Exhibit 1 at 3.

3

cmt. n. 1(D), warranting compassionate release, because the COVID-19 pandemic is devastating prison populations, and he is subject to particular danger because of health conditions. *See, e.g., Miller v. United States,* No. CR 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020).

### B. Ms. Gandy's health conditions present extraordinary reasons for release.

Courts have routinely found that a risk factor identified by the CDC constitute extraordinary and compelling reasons for release. However, the list of factors identified by the CDC are not definitive or exhaustive. Based on its periodic review of the evolving scientific literature, the CDC has designated three categories of medical conditions for which there is scientific evidence of "an association with severe illness from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra precautions/evidencetable.html (last visited Sept. 11, 2020). The first category ("Strongest and most consistent evidence") includes risk factors for which there is "consistent evidence from multiple small studies or a strong association from a large study." *Id*. The second category ("Mixed evidence") includes risk factors for which "multiple studies . . . reached different conclusions about risk associated with a condition." *Id.* And the final category ("Limited evidence") includes risk factors for which there is "consistent evidence from a small number of studies." *Id*. Thus, a condition may be placed in the second category ("Mixed evidence"), even if numerous high quality studies show a strong link to

4

severe illness from COVID-19, if just a few studies reach a different conclusion. And a condition may be placed in the third category ("Limited evidence"), even if multiple studies consistently show a link, if the number of studies is not yet sufficiently large. [3] Moreover, the CDC does not purport to have analyzed every possible medical condition or combination or conditions, or to have reviewed all available studies. Hence an individual could present convincing evidence of increased vulnerability to COVID-19 based on a medical condition not yet recognized by the CDC as a possible risk factor because the CDC has not yet assessed the condition or reviewed the relevant research. Moreover, an individual could also present compelling evidence from a medical expert that her particular history and combination of conditions render her acutely vulnerable to COVID-19. "[I]f scientific certainty is elusive, courts adjudicating compassionate release applications must consider legitimate possibilities, supported by reliable evidence, that inmates face particularized health risks." *United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *13 (N.D.N.Y. Apr. 23, 2020. "[G]iven the unsettled nature of the science surrounding risk factors, to say . . . that the Court must find that there is a well-established causal link between [a defendant's medical condition] and severe manifestations of COVID-19, supported by scientific

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (accessed Nov. 15, 2020)

consensus, or else reject [the defendant's] factual assertion that he is at heightened risk, sets an unrealistically high bar." *Id*.

Significantly, several district courts in the Eastern District of Michigan, as well as across the nation have concluded that latent TB alone or in combination with other factors warrant extraordinary and compelling circumstances even though Latent TB has not been identified by the CDC as a risk factor. See *United States v. Greene*, No. CR 15-20709, 2020 WL 4581712, at *3 (E.D. Mich. Aug. 10, 2020) (finding Latent TB was an extraordinary and compelling circumstances warranting a reduction in Greene's sentence at Yazoo City Low); *United States v. Ireland*, No. 17-20203, 2020 WL 4050245, at *4 (E.D. Mich. July 20, 2020) (finding Latent TB as extraordinary and compelling circumstance given the scientific community's uncertain and evolving understanding of the interplay between COVID-19 and other pulmonary illnesses); *United States v. Watkins*, No. 15-20333, 2020 WL 4016097, at *1 (E.D. Mich. July 16, 2020) the district court found that Latent TB combined with the inability to socially distance at BOP Facility was extraordinary and compelling circumstance warranting release); *United States v. Atwi,* No. 18-20607, 2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020); see also *United States v. Aslam*, No. CR 17-50-RGA, 2020 WL 4501917, at *5 (D. Del. Aug. 5, 2020l) (finding latent tuberculosis in combination of other ailments were "extraordinary and compelling reasons"). "T]he rapidly changing nature of science surrounding this novel virus

6

displaces the CDC as the sole medical authority on COVID-19 risk factors." *Segars v. United States*, No. 16-20222-3, 2020 WL 3172734, at *3 (E.D. Mich. June 15, 2020).

### 1. Ms. Gandy Has Medical Conditions that Render Her Vulnerable To Severe Illness From COVID-19.

**Anemia**-Both BOP records confirm that Ms. Gandy is anemic.  See Exhibit 2- Medical Records at 045, 066.  Notably, she was diagnosed in January of 2020. She had critically low hemoglobin levels. *Id*. At 066, 068.  A recent meta-analysis of data available reported:

[A]nemia seems to be associated with an enhanced risk of severe COVID-19 infection. The possible pathophysiological link between anemia and severe COVID-19 can be explained by these reasons. Patients with anemia will have low hemoglobin levels. In the circulation system, hemoglobin serves as a carrier for oxygen to target organs in the body. When the concentration of the hemoglobin in the circulation is low, the transport of oxygen to several organs in the body will be disrupted, therefore causing hypoxia that will eventually result in multiple organ dysfunction, especially respiratory organ dysfunction. Multiple organ dysfunction will contribute to the development of severe outcomes in COVID-19 infection. Moreover in COVID-19 infections, the state of anemia in the patients could be worsened. First, SARS-CoV-2 can interact with hemoglobin molecules on the erythrocyte through ACE2, CD147, and CD26 receptors. This viral-hemoglobin interaction will cause the virus to attack the heme on the 1-beta chain of hemoglobin and causing hemolysis. Second, SARS-CoV-2 may mimic the action of hepcidin which increases circulating and tissue ferritin (affecting liver, spleen, bone marrow, and muscles mainly), while inducing serum iron deficiency and lack of hemoglobin, by consequence. The resulting hyperferritinemia will give rise to ferroptosis, with high oxidative stress and lipoperoxidation that can precipitate the inflammatory/immune over-response (cytokine storm) and causing a severe outcome of the disease  Patients with anemia should hence be advised to take extra precautions to minimize risk exposure to the virus.

See Hariyanto TI, Kurniawan A. *Anemia is associated with severe coronavirus disease 2019 (COVID-19) infection* [published online ahead of print, 2020 Aug 28 https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7452827 (accessed last Nov. 15, 2020).

Additionally, the CDC now states that adults of any age with a BMI of 25 or higher might be at an increased risk for severe illness from the virus that causes COVID-19.[4] The CDC has labeled a BMI greater than 25 as a risk factor with "limited evidence". See CDC, Medical Conditions Evidence Table. According to the CDC Adult BMI calculator. Ms. Gandy has a BMI of 26.6. Exhibit 2- Medical Records at 035.[5] Additionally, she is being treated for hyperlipidemia. *Id*. at 045. Porter suffers from high cholesterol, or hyperlipidemia. "The CDC has recognized hyperlipidemia, along with other chronic diseases, as prevalent in patients hospitalized due to COVID-19." *Cotton v. United States*, No. CR 16-20222-8, 2020 WL 3488752, at *3 (E.D. Mich. June 26, 2020); *United States v. Porter*, No. 10-20075, 2020 WL 4590524, at *2 (E.D. Mich. July 14, 2020).

**2. Conditions at Houston FDC warrant release.**

Houston FDC currently reports that no inmates are positive and that 7 staff members have tested positive for COVID-19; however, the facility has had 18

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Nov. 12, 2020)
[5] As of June 2020, Ms. Gandy weighted 170 at 5'7 in height.

8

individuals recover. Despite the currently low numbers in the facility, this is no guarantee that COVID-19 is not present among the inmate population and staff at a much higher rate. " Zero confirmed COVID-19 cases is not the same thing as zero COVID-19 cases." *United States v. Amarrah*, 458 F. Supp. 3d 611, 618 (E.D. Mich. 2020). Without frequent COVID testing of all inmates and employees, it is difficult to determine who is and is not infectious, and as a result COVID-19 remains a serious threat at Houston FDC, especially for vulnerable individuals like Ms. Gandy.

Simply put, the second wave has arrived. Vigorous testing is especially important now as the United States is reporting a serious spike in COVID-19 cases as more than one hundred thousand (100,000) new cases are being recorded daily, with experts predicting the pandemic is entering its worst phase.[6] According to the Texas Medical Center, who is tracking the COVID-19 rate for the greater Houston area, there were 1184 new cases as of the date of this filing.[7] While Ms. Gandy does not have direct contact with the community surrounding Houston FDC, she risks exposure from facility employees who likely live in neighboring areas that are experiencing drastic increases in COVID-19 cases.

---

[6] Kim Bellware, Lateshia Beachum, Hamza Shaban, Meryl Kornfield, Darren Sands, Jacqueline Dupree and Carolyn Y. Johnson, U.S. surpasses 10 million coronavirus cases; experts warn country is entering worst phase, The Washington Post, https://www.washingtonpost.com/nation/2020/11/09/coronavirus-covid-live-updates-us/ (Nov. 9, 2020, 1130 PM).

[7] https://www.tmc.edu/coronavirus-updates/daily-new-covid-19-positive-cases-for-the-greater-houston-area/ (accessed Nov. 17, 2020)

The dangers of transmission, the inability to properly socially distance within the facility, and the growing number of positive cases in the surrounding community and throughout the country create a dangerous environment for Ms. Gandy as it increases her risk of severe illness or death from COVID-19. Therefore, extraordinary and compelling reasons warrant modification of her sentence.

### IV. MS. GANDY IS NOT A DANGER TO THE COMMUNITY AND THE § 3553(A) FACTORS FAVOR RELEASE

The 18 U.S.C. § 3553(a) factors, especially weighed during the pandemic, weigh in favor of Ms. Gandy's release. Indeed, in the era of COVID-19, "sufficient but not greater than necessary" takes on new meaning, and particular significance, for vulnerable at-risk inmates. That is, "[t]o avoid a sentence that was sufficient but no greater than necessary from becoming one immeasurably greater than necessary," the compassionate release of vulnerable, low security inmates like Ms. Gandy is appropriate. *United States v. Park*, 2020 WL 1970603 at *5 (S.D.N.Y. Apr. 24, 2020) (emphasis added) (internal citation omitted); *United States v. Mel*, 2020 WL 2041674 at * 3 (D.Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

Ms. Gandy is 49 years of age. Admittedly, her offenses were serious as they involved her involvement in fraud and a loss amount of over $360,000. Nevertheless,

10

they were not violent and she does not have a violent history. Due to her age and gender, her chance of committing additional crimes for which she would be reincarcerated is low. See U.S. Sentencing Comm'n, The Effects of Aging On Recidivism Among Federal Offenders 23 (2017) at A-40, (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf) (reincarceration rates for female offenders who are released at ages 40-49 is 10.7%).

While incarcerated, she has taken steps to improve herself. Ms. Gandy earned her GED, completed African American Education and job informational classes. (Exhibit 3- Individualized Needs Plan.) Although she is qualified to participate in the Residential Drug Treatment program, she is currently not enrolled due to the modified operations in the BOP. *Id*. To her credit, these courses demonstrate her post offense rehabilitation which the Court should consider. *Pepper v. United States*, 562 U.S. 476, 490-93 (2011). Ms. Gandy was allegedly found to possess a controlled substance while incarcerated, however she vehemently disputes the allegation and has filed an appeal which has not been adjudicated. *See* Exhibit 3 at 3.

The calculus has also changed since Ms. Gandy's original sentencing with the COVID-19 pandemic. The time she has served for the past few months, in particular– and any time she serves after the filing of this motion –is a more onerous punishment than could have been anticipated at sentencing. 18 U.S.C. § 3553(a)(2)(A). Federal

11

prisons are harsh environments generally, where the risk of serious harm is never completely nonexistent. However, the COVID-19 pandemic marks the first time that a substantial subset of federal inmates now daily face the real possibility of serious illness or death, with no end yet in sight. This is especially so given the current surge of cases in the United States.

Section 3553(a)(2)(D) also weighs in favor of Ms. Gandy's release, given the risks to her health posed by being incarcerated during the COVID-19 pandemic. Ms. Gandy's pre-existing health conditions are part of her "history and characteristics," causing a heightened concern for the adequate medical care, and provision of self-care, in the prison environment. Ms. Gandy reports that she has not been able to obtain the necessary medical treatment for an issue that she has struggled with while incarcerated since November of 2019. See Exhibit 2- Medical Records at 031, 087. Additionally, Ms. Gandy suffers from an Opioid Use Disorder and Major Depressive Disorder. See. Exhibit 2 at 032. Given the paucity of treatment and severe strain on BOP resources, she could receive the necessary treatment in the community.

She is eligible for home confinement on July 28, 2022, roughly eighteen months from now, and has an ultimate release date of October 18, 2023. Exhibit 4 – Public Information Inmate Date. Ms. Gandy remains ready to abide by any terms of supervision—home confinement, GPS monitoring, and further treatment—that this Court imposes. Should she be released, she will reside with her son in the Metro

Detroit area. In light of the global COVID-19 pandemic, and Ms. Gandy's particular susceptibility to COVID-19, this Court should grant release.

## CONCLUSION

For all of the reasons stated, Ms. Gandy respectfully requests this Court to grant her motion for compassionate release, reduce her sentence to time served with any additional terms the Court deems necessary, and order her immediate release to live with her son.

Respectfully submitted,
/s/Natasha Webster
FEDERALCOMMUNITY DEFENDER
613 Abbott St., Suite 500
Detroit, Michigan 48226
 (313) 967-5847
Natasha_Webster@fd.org

Dated: November 17, 2020

## CERTIFICATE OF SERVICE

I certify that I submitted this filing on the date indicated above using the CM/ECF system, which will send notification to opposing counsel.

Dated: November 17, 2020